IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| LISA ASCOLESE | : | CIVIL ACTION | : |
| | : | | |
| v. | : | | |
| | : | | |
| SEPTA | : | NO. 07-665 | |
| | : | | |

### MEMORANDUM

**Baylson, J.**                                                                                        **May 22, 2008**

The issue presented is not novel or unique; Plaintiff, Lisa Ascolese, ("Plaintiff" or "Ascolese") is a female transit officer employed by SEPTA ("Defendant" or "Southeastern Pennsylvania Transit Authority"). The evidence shows remarks and conduct by a few male co-workers reflecting hostility towards her as a female colleague, but there is no evidence that a supervisor committed such acts. In this case, the offensive conduct shown by Plaintiff's evidence was not as frequent or offensive as many reported cases reveal; indeed, it may fairly be characterized as sporadic or isolated. Can SEPTA be liable under these facts?

I have decided that summary judgment must be denied for basically two reasons, one factual and one legal, and in combination, a jury could conclude from the facts and law that Defendant SEPTA is liable to Plaintiff. Although SEPTA concluded that discipline was appropriate against one of Plaintiff's co-workers for his offensive remarks and conduct, his initial punishment was subsequently and substantially reduced to what may a jury may characterize as a slap on the wrist, and under the prevailing legal standard, i.e., whether SEPTA handled this situation in a negligent manner, a jury trial is required.

Plaintiff asserts claims against Defendant, her employer, under Title VII of the Civil

Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000(e) et seq., and the Pennsylvania Human Relations Act, ("PHRA") 43 P.S. § 951 et seq. Southeastern Pennsylvania Transit Authority's ("Defendant" or "SEPTA") Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c). Defendants also bring a Motion to Strike Plaintiff's Exhibits P-71 and P-72 and Plaintiff's Certication. Oral argument was held on May 7, 2008.

**I.     Background**

    **A.     Procedural Background**

Plaintiff filed a four-count Complaint (Doc. No. 1) against SEPTA on February 20, 2007. Count I alleges hostile work environment sexual harassment under Title VII and Count II makes the same claim under the PHRA. In Counts III and IV, Ascolese claims that SEPTA violated Title VII and the PHRA by retaliating against her after she complained about the harassment.

Defendant filed an Answer to Plaintiff's Complaint. (Doc. No. 7). After a period of discovery, Defendant filed a Motion for Summary Judgment along with a Statement of Undisputed Facts. (Doc. No. 18). Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment, accompanied by a Statement of Disputed Facts. (Doc. No. 21).

Defendant filed a Motion to Strike Plaintiff's Exhibits P-71, P-72, and Plaintiff's Certification on January 11, 2008. (Doc. No. 29). Plaintiff then filed a Response. (Doc. No. 32).

    **B.     Factual Background**

Plaintiff's claim that SEPTA created a hostile work arises out of several alleged incidents which occurred over a ten month period between May, 2005 and March, 2006, when she worked in SEPTA's Zones 1 and 6 as a transit officer. Plaintiff is a Caucasian female who has been working at SEPTA since October, 1989.

Plaintiff's problems at SEPTA began on an unspecified date in May, 2005, when she had a verbal altercation with Officer Nunan, ("Nunan") regarding the volume of a radio that Nunan was listening to. The parties dispute whether Plaintiff used profanity when addressing Nunan, but there is no dispute that Nunan used profanity in addressing Plaintiff. (See Def.'s Statement of Undisputed Facts at ¶ 31; Pl.'s Statement of Disputed Facts at ¶ 31). After the remarks were exchanged, Ascolese warned Nunan to stop using profanity towards her. She reported the incident to her superior, Sgt. Wright, but declined to file a complaint.

    I.    First Reported Incident

On June 22, 2005, Plaintiff had another argument with Nunan in which Nunan called Plaintiff a "fucking bitch." What was said in the conversation leading up to this remark is in dispute, but the fact that Nunan referred to Plaintiff this way is undisputed. Plaintiff reported the incident to her immediate supervisors, Sgt. Wright and Lt. Costigan, that same day. She told them that Nunan had verbally abused her and asked that either she or Nunan be transferred out of Zone 1. Sgt. Wright notified Chief Richard Evans, Chief of SEPTA's Transit Police Department ("Chief Evans") and SEPTA's Equal Employment Opportunity/Affirmative Action Department ("EEO/AA Department"), about the complaint. SEPTA conducted an investigation regarding the incident, but the parties dispute the fairness of that investigation. (Id. at ¶¶ 33-39; Pl.'s Statement of Disputed Facts ¶¶ 33-39).

On June 28, 2005, the Union which represented Plaintiff ("the Union") requested that Nunan be transferred out of Zone 1. Chief Evans declined to transfer either officer at that time, however, informing the Union that the officers could submit formal written transfer requests.

    ii.    Second Reported Incident

3

Plaintiff claims that on September 15, 2005, Nunan gave her "a menacing glare" during roll call. Plaintiff reported the incident to her superiors. Chief Evans then instructed Capt. Harold to determine whether Plaintiff and Nunan should be transferred out of Zone 1 pending completion of the investigation of Plaintiff's claims against Nunan. Three days later, on September 18, 2005, Plaintiff was transferred to Zone 3 and Nunan was transferred to Zone 2. Plaintiff's days off and work schedule remained the same.

As a result of the investigation into his actions toward Ascolese, Nunan was initially issued a 10-day suspension and final warning. This penalty, however, was reduced by the SEPTA Labor Relations Board to a one-day suspension for quarreling with a co-worker.

Plaintiff wished to return to Zone 1 after the completion of the investigation, in mid-October. Plaintiff's Union representative informed Chief Evans of her wish, but Chief Evans advised him that Plaintiff should initiate her return-transfer by filling out a written request. Plaintiff contends that because her transfer was temporary, as stated by SEPTA in the initial transfer order, SEPTA should have automatically transferred her back to Zone 1 at the end of its investigation into Nunan. Plaintiff contends that working at Zone 3 was inconvenient for her because in order to be on time for her 7:00 AM shift, she had to catch a 5:50 SEPTA train. Plaintiff is a single mother and claims that her child care arrangements are impacted by this longer commute.

Plaintiff remained at Zone 3 throughout the remainder of 2005. At the beginning of 2006, as part of SEPTA's annual bidding system, Plaintiff was transferred to Zone 6. Plaintiff claims that she requested to be transferred back to Zone 1, but was offered and accepted a place in Zone 6 as an alternative. (Pl.'s Statement of Disputed Facts at ¶ 60). Defendant claims that Plaintiff

requested Zone 6 as her first choice because she did not want to work under Capt. Harold, who supervised Zones 1, 2, 3, and 4. (Def.'s Statement of Undisputed Facts at ¶ 60). No documents have been produced to support either party's position. The commute to Zone 6 still required Plaintiff to catch a 5:50 AM train every morning.

### iii. Third Reported Incident

Plaintiff's problems at SEPTA continued at her new post. On January 27, 2006, Plaintiff discovered some version of the photographs marked P-72. The parties dispute exactly what Plaintiff saw. However, it is agreed that a picture was posted on the bulletin board in Zone 6 which contained two cut-out photographs. The first was of a young blond woman bending over with her hair down. The woman's bare buttocks are exposed to the camera and there is a golf ball between the cheeks of her buttocks. The second photograph is of a very muscular man in a thong. This photograph, like the first, is taken from behind. Plaintiff contends that when she first saw the image, a phallic shape had been drawn extending to the man's groin area toward the woman's buttocks. Defendant does not dispute that the two images were hung together, but contends that there is some question as to the existence of the phallic shape between them when Plaintiff discovered them. SEPTA saved the images of the man and the woman but not the shape that may have been drawn between them.

Sgt. Wilson ("Wilson"), Plaintiff's superior, discovered Plaintiff crying when she reported to work on that morning. Wilson removed the photographs and contacted SEPTA's EEO/AA Department about the incident. Wilson met with an employee from that department, Nancy Berman, and the two of them then met with Chief Evans. Defendant contends that Chief Evans assigned Wilson to investigate the matter. (Id. at ¶ 66). Plaintiff claims Chief Evans

assigned a different officer to investigate. (Pl.'s Statement of Disputed Facts at ¶ 66).

Defendant claims that the photographs were hung by Officer O'Brien ("O'Brien"), a rookie officer, acting alone. (Def.'s Statement of Undisputed Facts at ¶ 67). Plaintiff asserts that O'Brien "was not the only participant in this incident" and that circumstantial evidence suggests that several officers, some higher in rank than O'Brien or Plaintiff, may have been present when the photographs were hung. Plaintiff also contends that the image itself was intended to "target" her. She asserts that the officers who hung the photographs selected the picture of the woman because she looked like Plaintiff. (Pl.'s Statement of Disputed Facts at ¶ 68). Defendant claims that O'Brien did not know Plaintiff and did not intend to target her. (Def.'s Statement of Undisputed Facts ¶ 69).

In response to the incident, SEPTA gave O'Brien a written warning and re-instruction on SEPTA's policy against sexual harassment and related workplace policies. Chief Evans also issued a department-wide memorandum reaffirming SEPTA's policy against sexual harassment. The memo was read at roll call and posted in each Zone headquarters.

Plaintiff took six days of paid sick time after the January 27 incident and returned to work on February 7, 2006. On February 9, she requested a transfer from Zone 6 to either Zone 1 or Zone 5. Chief Evans told Plaintiff he had no openings in Zones 1 and 5, but that SEPTA could transfer her to Zone 7, if she would work a different shift. Plaintiff declined this transfer and filed a grievance with the Union. Plaintiff contends that Chief Evans failed to provide her with the requested transfer in order to retaliate against her for filing a sexual harassment complaint. (Pl.'s Statement of Undisputed Facts at ¶ 76).

      iv.     Fourth Reported Incident

On March 6, 2006, Plaintiff reported to Sgt. Santiago that she had seen a calendar through the open door to one of the men's locker rooms in Zone 6 that offended her. (See Pl.'s Ex. P-70). The picture on the calendar for the month of March was of a woman in a low cut top and a mini-skirt and high heels, standing next to a car. Sgt. Santiago removed the calendar and contacted Lt. Arnold in Internal Affairs, Chief Evans, and the EEO/AA Department. Plaintiff claims that she made her first complaint about the calendar in February but that Lt. Lawson refused to remove it. (Id. at ¶¶ 79-80). Defendant denies that Plaintiff made any complaint before March 6.[1]

SEPTA's investigation determined that Officer Brown hung the calendar but that he did not intentionally violate SEPTA's sexual harassment policy. SEPTA claims, however, that it "counseled" Brown on his conduct and required him to attend additional "training" with the EEO/AA Department. (Def.'s Statement of Undisputed Facts at ¶ 85).

Plaintiff received a first level grievance hearing on her complaint in front of Capt. Rowell on March 16, 2006.[2] Capt. Rowell denied Ascolese's demand that the six days of sick time she took after the January incident be restored, but recommended that she be transferred back to Zone 1. Ascolese was transferred back to Zone 1 on April 9, 2006.

## II.     Motions to Strike

Defendant moves to strike Plaintiff's Exhibits P-71 (Def.'s Mot. to Strike, Exh. A), P-72 (Id. Exh. B), and Plaintiff's Certification. (Id. Ex. D). Defendant seeks to strike P-71 and P-72

---

[1] Defendant denied that Ascolese had made an earlier complaint about the calendar at oral argument on May 7, 2008.

[2] Plaintiff's grievance hearing had to be rescheduled twice: the first time because she was on sick leave and the second time because the complaint Plaintiff initially filed did not demand that SEPTA restore the six days of sick time she took after seeing the image portrayed in exhibit P-72. SEPTA demanded that Plaintiff file an amended written complaint before the hearing.

7

because neither document was produced by Plaintiff during discovery in its current form and neither document has been properly authenticated under Federal Rule of Evidence 901. Defendant seeks to strike Plaintiff's Certification because it is argumentative, conclusory, and contradictory of her deposition testimony. (Id. at 2). As the undersigned indicated at oral argument on May 7, the Court will deny this motion.

P-71 is a hand-drawn diagram of Zone 6 of SEPTA headquarters, where Plaintiff allegedly discovered the two photographs posted by O'Brien. The document is not signed or dated and was not produced during discovery. (Id. at 2).

P-72 is a copy of the posting that was hung in Zone 6 with an addition. The picture contains copies of the two magazine postings–one of a young blond woman bent over with a golf ball between her buttocks and one of a muscular man wearing a thong, facing away from the camera. A hand-drawn object, which appears to be a penis, has been drawn onto the man, pointing up toward the woman's buttocks. Defendant does not dispute that these two pictures are copies of the photographs hung on the wall in Zone 6 in January, 2006, but Defendant asserts that "[i]t is not clear what the hand-drawn object purports to be." (Id. at 3). At her deposition, Plaintiff testified that an object had been drawn onto the picture of the man and "I'm not sure if it was supposed to be a penis or if it was supposed to be a golf club." (Id. Exh. C at 90).

Defendant saved the two images of the man and the woman but did not keep the paper or poster on which they were posted, so the original phallic shape Plaintiff claims to have seen has been destroyed. Defendant has not made any statement as to how it contends the pictures were arranged when Plaintiff found them.

Plaintiff asserts that Defendant failed to preserve the original paper to which the pictures

were attached and "disassembled the pictures from the manner in which they were located to each other, to make the image less severe." (Pl.'s Opp. to Def.'s Mot. to Strike at 3-4). At oral argument, defense counsel represented that Defendant does not have any further documents on this issue. Plaintiff's counsel acknowledged that Plaintiff's exhibit P-72 is based on Plaintiff's recollection of what she observed. Plaintiff's counsel also stated that Plaintiff created P-71, the map of the Zone 6 headquarters, based on her recollection.

Under Federal Rule 901, the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. McQueeney v. Wilmington Trust Co., 779 F.2d 916, 928 (3d Cir. 1985). An illustration may be authenticated by the testimony of a witness with knowledge that the "matter is what it is claimed to be." FED. R. EVID. 901(b)(1). The burden of authentication is slight. McQueeney, 779 F.2d at 928. The party presenting the evidence need only make a prima facie showing of authenticity to the Court, at which point the evidence may be submitted to the jury. United States v. McGlory, 968 F.2d 309, 328-29 (3d Cir. 1992).

Plaintiff's exhibits are in satisfactory form for the Court to consider them at summary judgment. The Supreme Court has rejected the view that "the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A non-moving party is not precluded from relying on unauthenticated documents to oppose a motion for summary judgment, so long as the documents are ultimately reducible to admissible evidence at trial. Id.

Plaintiff could authenticate exhibits P-71 and P-72 through her own testimony at trial: if Plaintiff testified that she drafted the map of headquarters seen in P-71 and that she created

exhibit P-72 based upon the photographs saved by SEPTA and her memory of what she saw on January 27, 2006, those documents would be authenticated and, therefore, admissible. At oral argument on May 7, 2008, Plaintiff's counsel indicated that Plaintiff would testify in this manner. As the exhibits might be introduced to the jury, they can be considered at summary judgment. Celotex, 477 U.S. at 324.

The Certification, which Defendant also moves to strike, is an affidavit from Plaintiff. While the document may be argumentative, conclusory, and accusatory at times, it does set forth some factual assertions based on personal knowledge, as required by Federal Rule of Civil Procedure 56(e).

The Court denies Plaintiff's Motion to Strike because (1) exhibits P-71 and P-72 can be authenticated at trial and (2) the problems presented by Defendant regarding Plaintiff's Certification do not make that document inadmissable at this stage of the litigation.

### III.     Legal Standard For Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**IV.     Discussion of Reasons for Denying Summary Judgment**

Title VII and the PHRA make it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such an individual's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a)(1) and 43 P.S. § 951. Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment. Meritor Savs. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986). The analysis under Title VII and the PHRA are identical, as Pennsylvania courts have construed the protections of the two acts inter-changeably. Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir. 2001).

The Supreme Court recently noted the importance of granting a district court discretion in fact-based determinations made at trial. See Sprint/United Management Co. v. Mendelsohn, 128 S.Ct. 1140, 1144-45 (2008) (holding that the Court of Appeals should afford the district court broad discretion in its ruling on an evidentiary matter because of the district court's familiarity with the details of the case). The plethora of disputed facts in this case, although focusing on four incidents noted above, result in genuine issues of material fact, which must in resolved by a jury in the context of negligence standard.

### A. Parties Dispute Material Facts Regarding Plaintiff's Work Environment

In order to establish a claim for hostile work environment sexual harassment, Plaintiff must demonstrate: (1) she suffered intentional discrimination because of her sex; (2) the harassment complained of was pervasive or severe;[3] (3) the harassment detrimentally affected her; (4) the conduct she complained of would have detrimentally affected a "reasonable" woman in her position; and (5) there is a basis for holding an employer liable. West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995). The Court must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or merely offensive, and whether it reasonably interfered with Plaintiff's work performance. Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993).

Defendant argues that Plaintiff was not subject to a hostile work environment because the harassment she experienced (if any) was not sufficiently severe or pervasive. SEPTA

---

[3] The Third Circuit originally stated this element as the conjunctive "severe and regular" but later changed the standard to conform with the Supreme Court's use of the disjunctive "severe or pervasive." See Jensen v. Potter, 435 F.3d 444, 449 n. 3 (3d Cir. 2006) overruled in part on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct 2405, 2415 (2006).

characterizes the alleged harassment as sporadic and the four incidents which Plaintiff experienced as isolated.  Defendant points out that the incidents happened at two locations and involved three different coworkers over the course of nine or more months.  Plaintiff alleges that all the incidents are connected and that taken together, the totality of the circumstances created a hostile work environment.  Plaintiff further asserts that a reasonable jury could conclude that Plaintiff's coworkers targeted her with the tacit approval of those in charge at SEPTA.

      **B.**      **The Issue of Whether Defendant is Liable for the Actions of Plaintiff's Coworkers is for a Jury to Decide**

If a plaintiff's supervisors create a hostile work environment, the employer is strictly liable, though an affirmative defense may be available where there is no tangible employment action.  <u>Burlington Industries Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998).  The Court agrees with Defendant that the evidence does not support Plaintiff's contention that her supervisors at SEPTA participated in any of the alleged incidents which Plaintiff contends created a hostile work environment.  Plaintiff's allegation that O'Brien was not acting alone when he hung the inappropriate image which Plaintiff discovered on January 27, 2006 has not been supported by any witness testimony with personal knowledge.  Similarly, Plaintiff's own deposition discredits Plaintiff's argument that supervisors were aware of the presence of the calendar in the men's bathroom before she complained about it on March 6, 2006.

This does not necessarily mean, however, that a jury could not hold Defendant responsible for the harassment: an employer will be held liable under Title VII for the harassing conduct of an alleged victim's coworker if the employer was negligent or reckless in failing to take remedial action upon notice of harassment.  <u>Gates v. Andreoli</u>, 482 F.3d 641, 644 (3d Cir.

2007). However, under negligence principles, prompt and effective action by the employer will relieve liability. Bouton v. BMW of North America, 29 F.3d 103, 107 (1994). The burden is on Plaintiff to show that her employer knew or should have known about the harassment but failed to take prompt and adequate remedial action. Jenson, 435 F.3d at 453. Even if the remedial action does not stop the alleged harassment, it is adequate if it is reasonably calculated to end the harassment. Gates, 482 F.3d at 644.

  A jury could find that Defendant's response to Plaintiff's complaint regarding Nunan was not prompt and adequate. Specifically, the facts are disputed as to why SEPTA took more than three months to investigate the matter and why SEPTA reduced Nunan's initial punishment of a final warning and a ten-day suspension to a one-day suspension and a citation for quarreling. A jury must determine the truth of the party's contentions in this matter. Pennsylvania State Police v. Suders, 542 U.S. 129, 152 (2004) (holding that fact questions precluded summary judgment where genuine issues of fact existed as to employee's claim that employer was liable under Title VII for alleged hostile work environment).

  Defendant argues that the Third Circuit's holding in Knabe v. Boury, 114 F.3d 407 (3d Cir. 1997) defeats Plaintiff's claim. Defendant points to three specific holdings made by the Circuit to support its argument: (1) there is no automatic duty to transfer an alleged harasser; (2) a flawed investigation does not necessarily trigger an employer's liability; and (3) a complaining employee cannot dictate the discipline issued to a co-employee for his offending behavior. However, Knabe had fewer incriminating facts but also restated the legal standard that "if an plaintiff proves that management level employees had actual or constructive knowledge about the existence of a sexually hostile work environment and failed to take prompt and adequate action"

14

they can be held liable for damages suffered by a plaintiff.  114 F.3d at 412 (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (1990).  This restatement is the crucial holding in our analysis of this matter.  This case cannot be dismissed as genuine issues remain as to whether Defendant was negligent in taking adequate remedial action to address Plaintiff's complaints. Negligence is a low standard of proof for Plaintiff to meet. As there are many factual disputes in this case, a jury might consider the evidence differently than a judge, bound by summary judgment standards.

      **C.    Defendant's Motion for Summary Judgment as to Plaintiff's Retaliation Claims is Denied**

In order to state a claim of retaliation, Plaintiff must demonstrate: (1) she engaged in activity protected by Title VII; (2) she was subjected to action by SEPTA that was materially adverse; and (3) the materially adverse action by SEPTA was causally related to her protected activity.  Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995).  An employer's action is considered materially adverse if it would dissuade a reasonable person from making or supporting a charge of discrimination.  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).  Once the prima facie case has been established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action in question.  Quiroga v. Hasbro Inc., 934 F.2d 497, 501 (3d Cir. 1991), cert denied 502 U.S. 940 (1991).  The plaintiff must then demonstrate that the employer's explanation is pretextual.  Waddell v. Small Tube Prods. Inc., 799 F.2d 69, 73 (3d Cir. 1986).

As to prong one, whether or not Plaintiff engaged in protected activity, SEPTA argues that Plaintiff's claim fails because she cannot persuade a jury that she had a reasonable, good-

faith belief that Nunan's conduct constituted sexual harassment, the reporting of which led to the alleged retaliation. The Court finds that the issue is not as clear as Defendant contends. By the time SEPTA transferred Plaintiff to Zone 6, Plaintiff had complained about Nunan's behavior three times. It is clear that Plaintiff felt harassed and the Court believes that a jury might find her feelings reasonable, given the circumstances.

As to prong two, genuine issues of fact preclude the Court from deciding whether Defendant's transfer of Plaintiff out of Zone 1, and SEPTA's subsequent refusal to transfer Plaintiff back to Zone 1, were materially adverse. Specifically, the parties contest the following: (1) Defendant asserts that Plaintiff actually requested her transfer out of Zone 1 and therefore that it cannot be seen as "forced" as Plaintiff later claimed. Defendant claims that Plaintiff did not want to be transferred out of Zone 1 but rather that she wished to be separated from Nunan. (2) Defendant contends that Plaintiff has only herself to blame for the fact that she was not transferred back to Zone 1 after SEPTA's completion of the investigation into Nunan because she did not put her request in writing, as instructed by Chief Evans. Plaintiff claims that she did not need to put this request in writing because her original transfer was only supposed to be temporary. (3) Defendant claims that Plaintiff did not wish to return to Zone 1 at the end of 2005 and that during SEPTA's annual bidding process she bid to be transferred to Zone 5. Plaintiff contends that she bid to return to Zone 1 and listed Zone 5 as a backup option. Neither party has produced any documentation to support their position.[4] (4) SEPTA contends that its refusal to

---

[4] At oral argument, Defendant's counsel asserted that Defendant would have kept a written record of Plaintiff's bid but that they had not produced the record because Plaintiff had not asked for it during discovery. Defendant's counsel indicated that SEPTA would produce the record for trial.

transfer Ascolese back to Zone 1 or 5 after she found the pornographic images in Zone 6 was not materially adverse to Plaintiff because Defendant offered to transfer Plaintiff to Zone 7 in a different shift, but Plaintiff refused this transfer. SEPTA contends that its offer shows it was seeking to accommodate Plaintiff as best it could. See Brown v. Brody, 199 F.3d 446, 457 (3d Cir. 1999) (finding that an action is not materially adverse simply because the employee is dissatisfied based on her personal preferences).[5] Plaintiff answers that a different shift in Zone 7 was not a viable option for Plaintiff and that SEPTA had a responsibility to do more to accommodate her.

**V.     Conclusion**

SEPTA's legal position is preserved until trial. It is possible that a trial record and answers to jury interrogatories, rather than the disputed facts of the summary judgment record, will cast a different light on the parties contentions. For the foregoing reasons, Defendant's Motion for Summary Judgment and Motion to Strike are denied.

An appropriate Order follows.

---

[5] Brown v. Brody holds that an employer's denial or forced imposition of a lateral transfer does not, standing alone, constitute a materially adverse action. However, Brown must be read alongside Burlington Northern, 126 S.Ct. at 2416, which holds that it is the jury's role to determine which of employer's actions (if any) can be defined as materially adverse.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA ASCOLESE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SEPTA | : | NO. 07-665 |

**ORDER**

AND NOW, this 22nd day of May, 2008, it is hereby ORDERED as follows:

1. For the reasons stated in the foregoing Memorandum, Defendant's Motion for Summary Judgment (Doc. No. 18), the Defendant's Motion to Strike P-71, P-72 (Doc. No. 25), and Plaintiff's Certification are DENIED.

2. Any pretrial motions, including motions in limine, shall be filed by June 2, 2008.

3. A final pretrial telephone conference will be held on June 6, 2008 at 3:00 p.m. Plaintiff's counsel will initiate the call, and when all parties are on the line, call chambers at 267.299.7520.

4. The trial will begin on June 16, 2008 at 10:00 a.m. in Courtroom 3A.

BY THE COURT:

s/Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\Dana\Ascolese v. Septa\Ascolese memo.op.wpd